UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

|  |  |
|---|---|
| DIEGO ARMANDO MORALES JIMENEZ, | Case No. 3:25-cv-00570-MTK |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| DREW BOSTOCK, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); TODD LYONS, Acting Director of Immigration Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); U.S. DEPARTMENT OF HOMELAND SECURITY; and PAMELA BONDI, Attorney General of the United States, | |
| Respondents. | |

**KASUBHAI,** United States District Judge:

Before the Court is Petitioner's Motion for Attorneys' Fees. ECF No. 29. For the reasons below, Petitioner's motion is granted.

## BACKGROUND

On August 22, 2025, this Court granted Petitioner's Writ of Habeas Corpus and ordered that "Respondents shall not detain Petitioner unless an authorized official makes an

Page 1 — OPINION AND ORDER

individualized finding of probable cause that Petitioner is a flight risk or a danger to the community." Op. & Order 15, ECF No. 27. This Court found that Respondents' detention of Petitioner violated the Administrative Procedure Act ("APA") and Petitioner's Fifth Amendment right to procedural Due Process. *Id.* at 10-14. Petitioner now moves for attorney fees under the Equal Access to Justice Act ("EAJA").

## DISCUSSION

The EAJA authorizes the payment of attorney fees to a prevailing party "in any civil action (other than cases sounding in tort)" against the United States, unless the government shows that its position in the underlying litigation "was substantially justified . . . ." 28 U.S.C. § 2412(d)(1)(A). Although the EAJA creates a presumption that fees will be awarded to a prevailing party, Congress did not intend fee shifting to be mandatory. *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir. 1995). The decision to grant EAJA attorney fees is within the discretion of the Court. *Id.*; *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Fee awards under the EAJA are paid to the litigant and not the litigant's attorney, unless the litigant has assigned their right to receive the fee award to counsel. *Astrue v. Ratliff*, 560 U.S. 586, 596-98 (2010). The EAJA serves "dual purposes" to "remove the financial disincentive for individuals and small businesses challenging or defending against government regulatory conduct where the cost of attorneys may be prohibitive" and "to encourage challenges to improper government action as a means of helping to formulate better public policy." *In re Hill*, 775 F.2d 1037, 1040 (9th Cir. 1985).

The parties do not dispute that Petitioner is a prevailing party under the EAJA, and Respondents do not argue that their position was substantially justified. Respondents object to Petitioner's EAJA petition on two bases: (1) that EAJA awards are unavailable "in a habeas proceeding of this type"; and (2) that some of Petitioner's counsel's time is "duplicative,

insufficiently explained, and not related to the litigation." Resp. Mot. EAJA Fees 2, 5, ECF No. 39.

## I.      Availability of EAJA Fees

First, Respondents contend that the waiver of sovereign immunity provided in the EAJA is limited to "any civil action (other than cases sounding in tort)" and that this is not such a civil action. *Id*. at 2 (quoting 28 U.S.C. § 2412(d)(1)(A)). The EAJA does not explicitly define "any civil action," so courts "look to the substance of the remedy sought, not the labels attached to the claim, in determining whether a proceeding falls within the term 'any civil action' of the EAJA." *Hill*, 775 F.2d at 1040-41.

"In at least some circumstances, [the Ninth C]ircuit has held that the EAJA applies to habeas corpus actions arising out of immigration proceedings." *Montero v. Ilchert*, 780 F.2d 763, 765 (9th Cir. 1986) (citing *Hill*, 775 F.2d 1037). In *Petition of Hill*, the petitioner sought admission to the United States. 775 F.2d at 1039. His admission was denied, and he was referred for exclusion for "sexual deviation or mental defect" because of his "unsolicited statement that he was a homosexual." *Id.* He successfully challenged his exclusion with a habeas petition on grounds that the finding was not based on a medical certificate as required by statute. *Id.* He moved for fees under the EAJA. *Id.* Although the court ultimately denied the fee request on other grounds, the court concluded that the petitioner's claim qualified as a civil action under the EAJA because it was "not merely a vindication of his own personal rights" but also those of other LGBTQIA2S+ individuals seeking admission to the United States. *Id.* at 1041. The lack of government-appointed counsel also weighed toward the EAJA applying in the petitioner's case, as did the lack of custodial or economic incentive to challenge the government's action. *Id.*

While acknowledging that *Petition of Hill* is binding, Respondents contend that the EAJA's waiver of sovereign immunity does not apply to this particular habeas proceeding because it concerned only Petitioner's rights. In making this argument, Respondents rely on *United States v. Soueiti*, 154 F.3d 1018 (9th Cir. 1998). In *Soueiti*, a criminal defendant faced deportation in his sentencing for bank fraud. *Id.* at 1018. The district judge ultimately declined to order deportation, and the defendant then moved for attorney fees under the EAJA. *Id.* at 1019. The court held that the nature of the case and the substance of the remedy was inherently criminal because, although deportation is generally "civil in nature," the petitioner was before the court to be sentenced in a criminal matter. *Id.* at 1019 (stating that although it is "hard to define 'civil action' broadly enough to embrace all its possible forms, . . . one definition that is always correct is that civil actions are those that are not criminal"). The court accordingly denied his claim for EAJA fees. *Id.* at 1019.

Contrary to Respondents' argument, this case is not like *Souetti*. Respondents liken this case to *Soueiti* because they contend both cases concern "only an individual litigant's rights," rather than the rights of future litigants. Resp. Mot. EAJA Fees & Costs 4. But *Soueiti*, by its terms, established no such broad rule with respect to *civil* claims. 154 F.3d at 1019 ("Sentencing in a criminal case is criminal. That is really all there is to this case."). This is not a criminal case. Regardless, the Court disagrees with Respondents' attempt to characterize Petitioner's action here as one where only his individual rights were at issue. Petitioner's success vindicates the rights of others unlawfully detained in violation of the APA and without due process. *See Petition of Hill*, 775 F.2d at 1040 (stating that the EAJA "encourage[s] challenges to improper government action as a means of helping to formulate better public policy"). The fact that

Petitioner lacks access to government-appointed counsel in this proceeding also weighs in favor of the applicability of the EAJA, as it did in *Petition of Hill*.

Further, although the Ninth Circuit has not addressed the applicability of the EAJA in the context of habeas actions challenging immigration detention, other circuits have "read the EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention" because they are civil in nature. *Daley v. Ceja*, 158 F.4th 1152, 1165-66 (10th Cir. 2025); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 435-36 (3d Cir. 2026) (holding the EAJA's waiver of sovereign immunity for fee awards "clearly covers petitions for writs of habeas corpus from immigration detention"); *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005) ("[A] habeas proceeding challenging immigration detention[] constitutes a 'civil action' under the EAJA."); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that habeas corpus proceedings are "hybrid actions" and that the EAJA does not apply to them); *Obando-Segura v. Garland*, 999 F.3d 190, 195 (4th Cir. 2021) (same). District courts in the Ninth Circuit have endorsed *Daley* and *Michelin*, applying the EAJA's waiver of sovereign immunity to habeas proceedings challenging immigration detention. *See, e.g.*, *Doe v. Chestnut*, 2026 WL 1459808, at *2 (E.D. Cal. May 25, 2026) ("[T]he better interpretation of the term 'any civil action' in the EAJA is that it unambiguously includes habeas proceedings challenging immigration detention."); *Amatbek Uulu v. Scott*, 2026 WL 865813, at *7 (W.D. Wash. Mar. 30, 2026) (citing *Daley*, *Michelin*, and *Petition of Hill*, in noting the applicability of the EAJA to an immigration detention habeas proceeding); *Malik v. Dosanj*, 2026 WL 638483, at *4 (D. Haw. Mar. 6, 2026) (same).

The plain text of the EAJA, as well as the substance of Petitioner's remedy, establish that this case is a "civil action" under the EAJA and that the EAJA's waiver of sovereign immunity applies for purposes of attorney fees.

## II.    Reasonableness of Requested Attorney Fees

Petitioner seeks an enhanced fee award, while Respondents contend that the amount of the award should be reduced on the basis that some of the billing entries are duplicative, block-billed, or not related to the litigation. The Court begins by addressing whether an enhanced fee is warranted before turning to Respondents' arguments for reducing the requested fee.

### A.    Enhanced Fee

Petitioner is entitled to a reasonable fee at the market rate under the EAJA. 28 U.S.C. § 2412(d)(2)(A). Generally, such an award cannot exceed the statutory rate[1] unless justified by "a special factor, such as the limited availability of qualified attorneys for the proceedings involved . . . ." *Id.* § 2412(d)(2)(A)(ii); *Underwood*, 487 U.S. 552, 571-72 (1988). The prevailing party must satisfy a three-part test to receive an enhanced fee for specialized skill: (1) "the attorney must possess distinctive knowledge and skills developed through a practice specialty"; (2) "those distinctive skills must be needed in the litigation"; and (3) "those skills must not be available elsewhere at the statutory rate." *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991). An attorney's specialty in immigration law "could be a special factor warranting an enhancement of the statutory rate," but such specialized skill must be "needful for the litigation in question."

---

[1] The 2025 adjusted statutory hourly rate is $258.46. United States Courts for the Ninth Circuit, Statutory Maximum Rates Under the Equal Access to Justice Act, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ [https://perma.cc/X6V3-B4SB].

Page 6 — OPINION AND ORDER

*Rueda-Menicucci v. Immigr. & Naturalization Serv.*, 132 F.3d 493, 496 (9th Cir. 1997) (quoting *Underwood*, 487 U.S. at 572).

Petitioner here seeks enhanced fees for Mr. Manning, Ms. Hellgren, and Ms. Cunnings, based on their specialized knowledge in the immigration field, and Respondents do not contest their entitlement to an enhanced fee. *See* Resp. Mot. EAJA Fees 6 ("Respondents do not take a position on counsel's enhanced rates in this case . . . ."). Considering the lack of opposition and based on this Court's review of Petitioners' counsel's supporting declarations, the Court finds that Petitioner satisfies the three-part *Love* test. Enhanced fees are therefore warranted.

Likewise, the Court finds that the specific amounts of the requested enhanced fees are reasonable. A court looks to the prevailing rates of the community and the experience and skill of counsel in that community when considering the amount of an enhanced fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013). Petitioner's counsel seek rates of $500 per hour for Ms. Hellgren and Ms. Cunnings, and $800 per hour for Mr. Manning. Respondents do not oppose Petitioner's counsel's proposed rates, and the Court finds that they are well supported by the declarations submitted in support of Petitioner's fee petition. Accordingly, the Court will award the enhanced fees requested by Petitioner's counsel.

## B.    Reasonable Hours Spent

The fee award is typically calculated by multiplying the rate by the hours spent. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Courts must "exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The prevailing party "should provide documentary evidence concerning the hours spent . . . ." *Id.* Here, Respondents contend that the Court should reduce the award because some of the hours spent were duplicative, lack specificity, or are not related to the litigation.

First, Respondents argue that some of the time Petitioner's counsel billed was duplicative because Ms. Hellgren's time should be limited to brief writing, while Ms. Cunnings time should be limited to court appearances. Respondents cite *Democratic Party of Washington State v. Reed*, in which the Ninth Circuit recognized that "courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." 388 F.3d 1281, 1286-87 (9th Cir. 2004). But there, the Ninth Circuit noted that the duplicative time was not needless under the circumstances, observing:

> [I]f lawyers merely watch so that they can learn and use their knowledge in subsequent cases, their time should not be billed. But if, for example, they are there because their assistance is or may be needed by the lawyer arguing the case, as when a judge asks "where is that in the record," and one lawyer must frantically flip through pages and find the reference to hand to the lawyer arguing, then the assistance is most definitely necessary. Also, for example, a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later.

*Id.* at 1287. Likewise here, the Court has reviewed the time entries and finds that they are not unreasonably duplicative under the circumstances of this case. Having a second lawyer assist with drafting briefing, particularly when that lawyer will be responsible for arguing in support of that briefing in court, makes logical sense. Likewise, having a brief writer attend hearings to provide context for future filings and to assist the arguing attorney locate items in the record is also reasonable. The Court will not reduce Petitioner's award in the manner Respondents ask. Instead, the Court finds the contested time reasonable.

Second, Respondents ask the Court to strike all of Mr. Manning's requested time because his time entries lack specificity and are "block-billed" with generic codes. As an initial matter, none of the time appears to be "block-billed," which refers to the practice of "enter[ing] the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."

*Mendez v. County of Son Bernardino*, 540 F.3d 1109, 1129 n. 2 (9th Cir.2008) (quoting *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)). Most of the time entries are in the range of a couple of hours each, and the entries reflect that Mr. Manning discretely billed for individual tasks completed on the same day. Instead, the question is whether the generic codes (e.g., for "Document preparation" or "Legal research/Investigation") are sufficiently specific for the Court to determine whether the time spent was unreasonable. Due to the short timeframe in which this case took place, the limited number of events and filings, the dates of Mr. Manning's work, and the small number of time entries (there are only twenty-one entries for a total of 37.2 hours), the Court has no difficulty deducing what the time entries relate to and that they are reasonable. Moreover, Petitioner's counsel provided further detail as to those entries via supplemental declaration that resolves any remaining concern about the reasonableness of Mr. Manning's time. *See* Manning Decl., ECF No. 42. The Court will not strike Mr. Manning's time because it has reviewed his time entries and finds the time billed to be reasonable.

Finally, Respondents ask the Court to strike all time spent by Ms. Orjuela because she did not enter an appearance or otherwise represent Petitioner in this case. Ms. Orjuela is Petitioner's immigration counsel, and her role in this litigation is set forth in her declaration:

> For the present case, as Mr. Morales Jimenez's immigration counsel, I provided litigation support to the federal litigation team by obtaining client declarations, drafting counsel declarations, and managing the client relationship throughout the litigation of the petition. Additionally, I provided direct support for the litigation team by ensuring compliance of notice and service requirements and incorporating the clients' facts and perspective into the documents filed before this Court, as detailed in the attached Time Records Table.

Orjuela Decl. ¶ 8, ECF No. 34. It is clear from this Court's review of Ms. Orjuela's declaration and time sheets that the time entries at issue do not relate to Ms. Orjuela's representation of Petitioner in his immigration proceedings but instead relate specifically to this case. Given Ms. Orjuela's relationship to and knowledge of Petitioner, her aid in this case appears to be in service

of efficiency rather than detrimental to it. Respondents cite no authority for the proposition that Ms. Orjuela's time is not recoverable simply because she did not enter an appearance in the case, and the Court is not aware of any. The Court will not strike Ms. Orjuela's time because its review of her entries confirms that the time she spent on this case was reasonable, was not duplicative, and was related to this litigation.

In sum, the Court finds based on its review of Petitioner's counsel's time logs that the hours are reasonable, and awards Petitioner attorney fees as follows:

| Attorney | Rate | Hours | Attorneys' Fees |
|---|---|---|---|
| Nelly Garcia Orjuela (*See* ECF No. 24) | $258.46 | 54.74 | $14,148.10 |
| Stephen Manning (*See* ECF No. 31) | $800.00 | 37.20 | $29,760.00 |
| Tess Hellgren (*See* ECF Nos. 32, 41 | $500.00 | 43.47[2] | $21,735.00 |
| Jordan Cunnings (*See* ECF No. 33) | $500.00 | 35.14 | $17,570.00 |
| **Total Fees** | | | **$83,213.10** |

## CONCLUSION

For the reasons discussed above, Petitioner's Motion for Attorney Fees (ECF No. 29) is GRANTED. Accordingly, Petitioner is entitled to an award of $83,213.10 in attorney fees.

DATED this 1st day of July 2026.

s/Mustafa T. Kasubhai
Mustafa T. Kasubhai (he/him)
United States District Judge

---

[2] This time includes the 3.5 hours Ms. Hellgren documented as spent on Petitioner's Reply in Support of his Motion for Attorneys' Fees. *See* Hellgren Decl., ECF No. 41.